**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**MIDLAND/ODESSA DIVISION**

| | |
|---|---|
| NEURAL AI, LLC,<br><br>Petitioner,<br><br>v.<br><br>GOOGLE, LLC,<br><br>Respondent. | Misc. Case No. 7:26-mc-324<br><br>Principal case pending in Western District of Texas, Civil Action No. 7:24-cv-00221-LS-DTG |

**NEURAL AI'S MOTION TO COMPEL COMPLIANCE WITH**
**SUBPOENA SERVED ON THIRD-PARTY GOOGLE, LLC**

# TABLE OF CONTENTS


I. FACTUAL BACKGROUND ........................................................................................ 1

A. The Underlying Litigation ........................................................................ 2

B. The Rule 45 Subpoena to Google and Google's Initial Objections ....................... 3

C. NAI's Meet-and-Confer Efforts and Google's Continued Non-Compliance ......... 3

II. THE COURT HAS JURISDICTION BECAUSE THE PLACE OF COMPLIANCE IN AUSTIN IS PROPER. ........................................................................................ 5

III. GOOGLE MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA. ... 6

A. The Requested Discovery Goes to the Heart of NAI's Infringement Claims......... 7

B. Google Has Not Substantiated Burden and NAI Offered Narrower Alternatives. . 9

IV. CONCLUSION ........................................................................................ 10

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*611 Carpenter LLC v. Atlantic Casualty Ins. Co.*,
2024 WL 1977160 (W.D. Tex. Apr. 30, 2024)....................6, 9, 10

*Camoco, LLC v. Leyva*,
333 F.R.D. 603 (W.D. Tex. 2019)....................6

*Conservation L. Found., Inc. v. Equilon Enters. LLC*,
2025 WL 2821238 (D.R.I. Oct. 3, 2025)....................5

*FG SRC LLC v. Xilinx, Inc.*,
2022 WL 22997130 (D. Del. Apr. 11, 2022)....................8

*Flores v. Lowes Home Centers, L.L.C*,
2023 WL 3959399 (W.D. Tex. June 12, 2023)....................6

*Kim v. NuVasive, Inc.*,
2011 WL 3844106 (S.D. Cal. Aug. 29, 2011)....................8

*Lucent Technologies, Inc. v. Gateway, Inc.*,
580 F.3d 1301 (Fed. Cir. 2009)....................8

*Meritage Homes, LLC v. AIG Specialty Ins. Co.*,
2024 WL 221448 (W.D. Tex. Jan. 18, 2024)....................5

*Neural AI, LLC v. NVIDIA Corp.*,
Case No. 7:24-cv-00221-LS-DTG (W.D. Tex.)....................1, 2, 5

*Trs. of Bos. Univ. v. Everlight Elecs. Co.*,
2014 WL 12792496 (D. Mass. Sept. 8, 2014)....................5

*Velocity Pat. LLC v. FCA US LLC*,
2017 WL 11893112 (N.D. Ill. Nov. 2, 2017)....................6

*Waller v. Jet Specialty, Inc.*,
2024 WL 7050192 (W.D. Tex. Nov. 19, 2024)....................6

**Rules**

Fed. R. Civ. P. 26....................6

Fed. R. Civ. P. 26(b)(1)....................6

Fed. R. Civ. P. 45....................1, 3, 5, 6

Fed. R. Civ. P. 45(c) ..........5

Fed. R. Civ. P. 45(c)(2)(A) ..........5

Fed. R. Civ. P. 45(d)(2)(B)(i) ..........5, 6

This motion arises from *Neural AI, LLC v. NVIDIA Corp.*, Case No. 7:24-cv-00221-LS-DTG (W.D. Tex.) (the "Underlying Action"), a patent-infringement action pending in this District. In the Underlying Action, Neural AI, LLC ("NAI") alleges that Defendant NVIDIA Corporation ("NVIDIA") infringes through its GPU-accelerated hardware and software: U.S. Patent No. 8,648,867 (the "'867 Patent"), Reissue Patent No. RE48,438 (the "'438 Patent"), and Reissue Patent No. RE49,461 (the "'461 Patent") (collectively, the "Asserted Patents"). *See* Exhibits 1–4.

NVIDIA has made customer deployment central to the Underlying Action. It disputes whether customers configure and use the accused products as NAI alleges and contends that NAI must obtain customer evidence to prove indirect infringement. *See* Laiche Decl. ¶¶ 24–25. Respondent Google, LLC ("Google") is one of NVIDIA's largest customers and end users. Its records and testimony therefore contain the real-world evidence NVIDIA says NAI must obtain.

NAI served Google on June 25, 2026, with Rule 45 subpoenas seeking targeted documents and corporate testimony concerning Google's configuration, integration, and use of NVIDIA GPUs and software. Google objected to every document request and deposition topic and has produced no documents and designated no witness. The parties have since met and conferred on three separate occasions, and NAI has repeatedly offered less burdensome alternatives to resolve the dispute. Among other things, NAI provided focused technical questions and proposed a draft declaration that Google could execute in lieu of document production and deposition testimony.

Those efforts have not resolved the dispute. Despite three conferences and numerous follow-up emails, Google has not committed to producing responsive documents, designating a witness, or providing an executed declaration addressing the relevant facts. *See* Exhibits 11–14, 20; Laiche Decl. ¶ 26. NAI therefore asks the Court to compel Google to produce documents responsive to Requests 1–12 on a rolling basis by dates certain and to designate and produce a

knowledgeable corporate representative to testify on Deposition Topics 1–5.

# I. FACTUAL BACKGROUND

## A. The Underlying Litigation

The Underlying Action involves direct, indirect, and induced infringement claims concerning claims 16–19 of the ’867 Patent; claims 1, 3–6, 8–9, 12, 14, 17–18, 21–23, 29–30, 32, 40, 43–44, 46, 48, 51–52, and 55–57 of the ’438 Patent; and claims 21–25 and 27–30 of the ’461 Patent (collectively, the “Asserted Claims”). *See* Exhibits 1 and 7. The Asserted Patents teach GPU-accelerated computing systems and methods. *See* Exhibits 2–4.

NAI’s January 20, 2026 Final Infringement Contentions identify integrated combinations of NVIDIA hardware—including GPUs, supercomputers and servers—and GPU-accelerated software, including CUDA, cuDNN, TensorRT, and higher-level frameworks, as the Accused Products. *See* Exhibit 7 at 2–9. NAI alleges NVIDIA encourages customers to combine, configure, and use those products in an infringing manner. *See id.* at 12–13.

NVIDIA disputes that selling the Accused Products proves customers configure and deploy them as NAI alleges. Although NVIDIA admits selling the Accused Products and partnering with resellers and service providers, it denies infringement and disclaims knowledge of customer use. *See* Exhibit 8 ¶¶ 18, 20–23, 87, 131, 171. Customer evidence is therefore directly relevant to NAI’s infringement claims.

Google is one of NVIDIA’s largest and most significant customers, partners, and end users of the Accused Products. NVIDIA and Google Cloud have “collaborated for more than a decade, co-engineering a full-stack AI platform that spans every technology layer—from performance-optimized libraries and frameworks to enterprise-grade cloud services.” *See* Exhibit 15 at 1. Google Cloud offers its customers NVIDIA GPU instances. *See* Exhibits 15–16. Google

is thus a real-world integrator, user, and deployer of the accused GPU-acceleration hardware and software. Its documents concerning the configuration, integration, deployment, and use of those products bear directly on whether the Accused Products are used in an infringing manner and whether NVIDIA induced or contributed to that infringement.

**B. The Rule 45 Subpoena to Google and Google's Initial Objections**

NAI served Google on June 25, 2026, with Rule 45 subpoenas for documents and corporate testimony, designating Austin, Texas, as the place of compliance. *See* Exhibits 5–6. The document subpoena contains twelve targeted requests directed to how Google configures, integrates, and uses NVIDIA GPUs and related software. *See* Exhibit 5. The accompanying deposition subpoena seeks testimony on the same core subjects across five topics. *See id*. Both subpoenas are limited to September 13, 2018 to the present and to U.S.-based or U.S.-directed activity. *See, e.g.*, *id.* at 12.

Google's responses were due July 14, 2026. At Google's request, NAI extended the deadline to July 21. *See* Exhibit 11 at 1. Google then objected to every request and topic on boilerplate grounds, refused to produce any documents or designate a witness. *See* Exhibits 9–10. NAI thus has received no discovery concerning Google's real-world configuration and use of the accused NVIDIA products, which is the evidence NVIDIA says NAI must obtain to prove indirect infringement and damages.

**C. NAI's Meet-and-Confer Efforts and Google's Continued Non-Compliance**

The parties first met and conferred on or around July 25, 2026. *See* Exhibit 12 at 2. NAI explained that the Subpoenas seek targeted discovery into how Google configures and uses NVIDIA GPUs and related software. Google said it was still investigating and needed to consult technical personnel. On July 28, NAI provided Google with a draft declaration, invited Google to revise it, and offered to consider an executed declaration in lieu of broader document production

and deposition testimony, subject to resolving material gaps. *See* Exhibit 13. The parties met again on August 1, 2026, and Google said it was continuing its investigation. *Id.*

On August 4, 2026, NAI supplied focused technical questions and recirculated the draft declaration, again confirming that "If Google commits to provide an executed declaration, Neural AI is willing to consider accepting the declaration in lieu of further document production and/or deposition testimony, subject to resolving any material gaps." *See* Exhibit 12 at 1; Exhibits 13–14. On August 6, 2026, Google responded that NAI's requests, questions, and draft declaration were "overbroad and unduly burdensome for a third party." Exhibit 20 at 8. It said it was "investigating the topics covered in the 'template' declaration" and "may be able to provide a declaration within a more reasonable scope," but demanded advance agreement that any declaration "satisf[y] all of Google's obligations under the subpoenas." *Id*. NAI responded that it would accept an appropriately complete declaration but could not agree in advance that any declaration would satisfy all obligations without confirming its contents. *Id.* at 7.

On August 11, 2026, NAI informed Google that NVIDIA had extended the deadline for third-party discovery motions through August 18, 2026 and asked Google to send proposed declaration edits promptly. *Id.* at 4. On Thursday, August 13 at 5:39 pm CT, Google said it had "an update" and requested another meet-and-confer. *Id.* The parties spoke for the third time the following Monday August 17, 2026. *Id.* at 1. Google's counsel raised factual issues with the declaration on that call, and the following day NAI sent a revised declaration addressing Google's stated concerns and offered two options to reduce the burden on Google: (1) execute a revised declaration addressing the identified issues without material gaps or (2) produce documents sufficient to establish those issues. *See id.*; Exhibit 21; Laiche Decl. ¶¶ 21–22.

Google's counsel responded only by asserting defensively that NAI had refused to narrow

its requests and had failed to satisfy its meet-and-confer obligations. That assertion is baseless. Over the past six weeks, NAI has participated in three separate calls, exchanged numerous emails, proposed two declarations confined to narrow issues as alternatives to broader discovery, and even offered to accept documents merely sufficient to address each issue identified in the narrowed declaration. Despite those repeated efforts to reduce Google's burden and resolve the dispute without motion practice, Google has remained noncompliant. As of filing, Google had identified no requests it would answer, produced no responsive documents, answered no technical questions, proposed no declaration revisions, made no commitment to execute a declaration, designated no witness, and set no compliance date. *See* Exhibits 12, 20; Laiche Decl. ¶ 26.

Document discovery in the Underlying Action closed August 11, 2026, deposition discovery closes September 16, 2026, and NVIDIA agreed to extend NAI's deadline to file third-party discovery motions related to documents through August 18, 2026. *See Neural AI, LLC v. NVIDIA Corp.*, Case No. 7:24-cv-00221-LS-DTG, Dkt. 181 (W.D. Tex.); Laiche Decl. ¶ 27. NAI cannot allow an open-ended investigation to consume the remaining discovery period and seeks court intervention while remaining willing to consider prompt and complete discovery that resolves the dispute. *See* Exhibit 11.

## II. THE COURT HAS JURISDICTION BECAUSE THE PLACE OF COMPLIANCE IN AUSTIN IS PROPER.

Rule 45(d)(2)(B)(i) directs a party seeking to compel compliance to apply to "the court for the district where compliance is required." Fed. R. Civ. P. 45(d)(2)(B)(i); *see also Meritage Homes, LLC v. AIG Specialty Ins. Co.*, 2024 WL 221448, at *4 (W.D. Tex. Jan. 18, 2024). Rule 45(c)(2)(A) permits document production "at a place within 100 miles of where the person resides, is employed, or regularly transacts business in person," and the issuing party need not choose a place within 100 miles of the recipient's headquarters. *See, e.g., Conservation L. Found., Inc. v.*

*Equilon Enters. LLC*, 2025 WL 2821238, at *1 (D.R.I. Oct. 3, 2025).

Austin satisfies Rule 45(c)(2)(A). Google has maintained an Austin presence for over a decade, currently employs more than 1,100 people, has leased multiple office spaces, and invested $600 million in a Texas data center as part of a $13 billion investment. *See* Exhibit 18. Google's registered agent is in Austin, and Google currently advertises 167 in-person jobs in Austin. *See* Exhibit 6; *see also* Exhibits 17, 19. Google cannot credibly maintain that Austin is not a place where it regularly transacts business in person.

Google instead objects that its likely custodians are near Mountain View, California. *See* Exhibits 9–10. But Rule 45(c)(2)(A) turns on where Google regularly transacts business in person, not where custodians or documents are located. Fed. R. Civ. P. 45; *Trs. of Bos. Univ. v. Everlight Elecs. Co.*, 2014 WL 12792496, at *3 (D. Mass. Sept. 8, 2014) ("Rule 45(c) says nothing about the location of documents subpoenaed."); *Velocity Pat. LLC v. FCA US LLC*, 2017 WL 11893112, at *4 (N.D. Ill. Nov. 2, 2017) (rejecting argument that, "regardless of its other locations," its headquarters was the "only location where it stores" requested documents). Because the designated place of compliance is proper, this Court has jurisdiction to resolve this Motion.

**III. GOOGLE MUST PRODUCE DOCUMENTS RESPONSIVE TO THE SUBPOENA.**

Federal Rule of Civil Procedure 26 provides that a party may obtain discovery regarding any nonprivileged matter that is relevant to the parties' claims or defenses and proportional to the needs of the case. Fed. R. Civ. P. 26(b)(1). "At the discovery stage, relevancy is broadly construed." *Flores v. Lowes Home Centers, L.L.C.*, 2023 WL 3959399, at *2 (W.D. Tex. June 12, 2023). "'[A] request for discovery should be considered relevant if there is any possibility that the information sought may be relevant to the claim or defense of any party.'" *Id.* (quoting *Camoco, LLC v. Leyva*, 333 F.R.D. 603, 606 (W.D. Tex. 2019)).

Where, as here, a non-party refuses discovery in response to a validly issued subpoena, Federal Rule of Civil Procedure 45 provides the Court for the district where compliance is required with broad discretion to compel the production of documents and information from third parties. Fed. R. Civ. P. 45(d)(2)(B)(i). Once a party moving to compel discovery establishes that the materials are relevant, "[t]he party opposing discovery bears the burden of stating 'with specificity the grounds for objecting to the request.'" *Waller v. Jet Specialty, Inc.,* 2024 WL 7050192, at *1 (W.D. Tex. Nov. 19, 2024); *see also 611 Carpenter LLC v. Atlantic Casualty Ins. Co*., 2024 WL 1977160, at *1 (W.D. Tex. Apr. 30, 2024). The non-party "must state with specificity the objection and how it relates to the particular request being opposed, and not merely that it is overly broad and burdensome." *611 Carpenter*, 2024 WL 1977160, at *1.

**A. The Requested Discovery Goes to the Heart of NAI's Infringement Claims.**

NVIDIA has made customer deployment a disputed issue. It contends that selling or providing the Accused Products does not prove customers configure and use them as alleged and that NAI needs customer evidence to prove infringement and its extent. *See* Laiche Decl. ¶¶ 24–25. Google is a major customer and end user. NVIDIA and Google have "collaborated for more than a decade, co-engineering a full-stack AI platform that spans every technology layer," (Exhibit 15 at 1) and Google offers NVIDIA GPU instances, including configurations powered by the accused NVIDIA Blackwell GPUs (Exhibits 15–16).

The information is also uniquely within Google's possession. NVIDIA may know what it designed and distributed, but, according to NVIDIA, only Google knows what it selected, configured, deployed, and actually ran. NVIDIA claims it does not possess Google's internal architecture and deployment records and has repeatedly disclaimed insight into customer deployments. *See* Laiche Decl. ¶ 25.

**The twelve document requests** seek discovery tied to the Asserted Claims in the Underlying Action, and track the accused computation from software selection through input, execution, memory, and output to establish infringement. *See* Exhibit 5.

- **Requests 1–4** seek documents sufficient to identify the software, frameworks, libraries, configurations, and custom code Google uses on NVIDIA GPUs; the NVIDIA software and sample code it uses; and how Google calls, interfaces with, modifies, or extends that functionality. They show which accused products Google deployed and whether Google used them as provided and intended or materially modified them.

- **Requests 5–6** seek architecture, design, data-flow, control-flow, and execution-flow materials and documents showing whether the relevant computations involve neural networks, layers, and outputs used as inputs to later neurons or layers. They show whether Google's systems perform the claimed GPU-accelerated operations and how the accused hardware and software work together as relevant to the Asserted Claims.

- **Requests 7–10** address the claimed memory and data paths: pointer, buffer, and intermediate-result reuse; GPU-memory allocation or partitioning; movement of inputs from CPU, host, storage, or network sources into GPU memory; and storage, transfer, accumulation, reuse, or return of outputs and intermediate results. They target the memory-management and data-transfer limitations at the heart of the Asserted Claims.

- **Requests 11–12** seek documents sufficient to show how GPU computations are scheduled, ordered, queued, synchronized, parallelized, launched, and executed, and how inputs, commands, model or parameter changes, interruptions, or output changes affect GPU-queue placement. They target the claimed coordination and control of GPU computations.

These requests target whether Google's systems perform the asserted method steps and whether NVIDIA's software, instructions, and support cause or encourage that use. *See Lucent Technologies, Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1321–22, 1333-34 (Fed. Cir. 2009) (a patentee must show all steps of a claimed method were performed to prove indirect infringement and damages "ought to be correlated, in some respect, to the extent the infringing method is used by" directly infringing third parties); *FG SRC LLC v. Xilinx, Inc.*, 2022 WL 22997130, at *5 (D. Del. Apr. 11, 2022) ("[I]t is clear that SRC has a need for information from third parties demonstrating that the parties practice the asserted claims."); *Kim v. NuVasive, Inc.*, 2011 WL 3844106, at *3

(S.D. Cal. Aug. 29, 2011) ("The Court finds the information sought in the subpoenas is relevant to NuVasive's claim of induced infringement and damages therefrom").

The requests are also bounded and particular. Each seeks only documents "sufficient to show" an identified technical fact. The Subpoena is limited to September 13, 2018 to the present and to U.S.-based or U.S.-directed activity. It does not seek every document mentioning NVIDIA, a wholesale source-code production, or information about products Google does not use.

**The five deposition topics** seek testimony on the same subjects as the document requests and directs Google to designate one or more knowledgeable persons on five topics. *See* Exhibit 5.

- **Topic 1**: the NVIDIA software and libraries Google uses to perform computations on NVIDIA GPUs;
- **Topic 2**: NVIDIA sample source code Google uses, in whole or in part;
- **Topic 3**: Google's customizations and data inputs that alter how NVIDIA software performs computations;
- **Topic 4**: identification of Google software that uses NVIDIA GPUs to perform computations; and
- **Topic 5**: how output and intermediate GPU results are stored, referenced by pointers, transferred, copied, streamed, written back, returned, accumulated, reused, or otherwise made available between GPU memory and CPU, host, system, storage, display, network, or other memory locations.

The testimony is proportional because it is limited to five topics tracking the twelve requests, the same defined period, and the same U.S. nexus, and NVIDIA claims it cannot supply Google's internal configuration or operating practices.

The information is central to the issues in dispute, uniquely within Google's possession, and sought through targeted requests and topics. Google should be compelled to produce it.

### B. Google Has Not Substantiated Burden and NAI Offered Narrower Alternatives.

Google's written objections do not "state with specificity" the burden Google would face

in producing responsive documents. *611 Carpenter LLC*, 2024 WL 1977160, at *1. Google repeated the same boilerplate objections across all twelve requests and five topics and then refused to produce documents or designate a witness. *See* Exhibits 9–10. Boilerplate objections unsupported by evidence of burden are not sufficient.

Google's objection that "NVIDIA GPUs" is vague and overbroad because the definition spans multiple pages and covers "hundreds of GPU architectures" does not show burden. *See* Exhibit 9 at 6. The definition tracks the Accused Products identified in NAI's infringement contentions (Exhibit 7 at 2–9), and the requests seek documents "sufficient to show" facts about products Google actually deploys. *See* Exhibits 5, 7, 9.

NAI minimized burden at every turn. Before subpoenaing Google, NAI first sought the information from NVIDIA. After service, NAI extended Google's response deadline, identified the implicated products and systems, supplied focused technical questions, offered a draft declaration in lieu of broader document discovery and testimony, and invited Google to identify any specific burdens. *See* Exhibits 11–14. NAI then offered two concrete paths to resolution: Google could either (1) execute a revised declaration addressing the identified issues without material gaps or (2) produce documents sufficient to establish those same facts. *See* Exhibit 20; Laiche Decl. ¶¶ 21–22. Google chose neither. *See* Exhibit 20; Laiche Decl. ¶ 26. Google cannot plausibly argue NAI refused to narrow and invoke burden as a basis for producing nothing.

## IV. CONCLUSION

NAI respectfully requests that this Court enter an order (1) compelling Google to produce nonprivileged documents responsive to Requests 1–12 on a rolling basis to be completed within twenty-one (21) days of the Court's order, and (2) compelling Google to designate and produce a knowledgeable witness on Deposition Topics 1–5 within thirty (30) days of the Court's order.

Dated: August 18, 2026

Respectfully submitted,

*/s/ Rocco Magni*

Max L. Tribble
Texas State Bar 20213950
Brian D. Melton
Texas State Bar 24010620
Rocco Magni
Texas State Bar 24092745
Samuel Drezdzon
Texas State Bar 24117374
SUSMAN GODFREY L.L.P.
1000 Louisiana
Suite 5100
Houston, TX 77002
Telephone: (713) 651-9366
Facsimile: (713) 654-6666
mtribble@susmangodfrey.com
bmelton@susmangodfrey.com
rmagni@susmangodfrey.com
sdrezdzon@susmangodfrey.com

Tamar Lusztig
NY State Bar 5125174
Emily Portuguese
NY State Bar 5920327
One Manhattan West, 50th Floor
New York, NY 10001
tlusztig@susmangodfrey.com
eportuguese@susmangodfrey.com

Tanner Laiche
WA State Bar 60450
401 Union Street, Suite 3000
Seattle, WA 98101
tlaiche@susmangodfrey.com

*Attorneys for Petitioner Neural AI, LLC*

**CERTIFICATE OF SERVICE**

The undersigned does hereby certify that on August 18, 2026, a true and correct copy of the foregoing document was served on counsel for Google, LLC and all counsel of record in the underlying action.

*/s/ Rocco Magni*
Rocco Magni

**CERTIFICATE OF CONFERENCE**

The undersigned certifies that counsel for Neural AI, LLC conferred in good faith with counsel for non-party Google, LLC regarding the issues raised in this Motion, including Zoom conferences on or about July 25, August 1, and August 17, 2026, and related email correspondence. Despite those efforts, the parties were unable to resolve the dispute.

*/s/ Rocco Magni*
Rocco Magni